IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANNABEL OLIVER,

Plaintiff,

v.

191 PRESIDENTIAL CONDOMINIUM UNIT OWNERS ASSOCIATION,

Defendant.

Civil Action No. ___________

# COMPLAINT

## INTRODUCTION

1. Plaintiff, who has disabilities, owns and resides in a condominium operated by Defendant at 191 Presidential Boulevard in Bala Cynwyd, Pennsylvania.

2. Defendant has a general “no-pets” policy, prohibiting residents from having pets on the premises. But Defendant also has a “Reasonable Accommodation for an Assistance Animal” policy, which provides that assistance animals are not pets, expressly recognizes animals that provide emotional support alleviating symptoms or effects of disability, and states that assistance animals are governed by that policy rather than the Association's no-pet policy. In addition, Defendant has a second “Emotional

Support Animals" policy permitting emotional support animals pursuant to approval and stated rules and regulations. Plaintiff requested a reasonable accommodation to Defendant's "no-pet" policy so that she could retain in her home two dogs, which serve as assistance animals that she needs due to her disability. This request accorded with the Defendant's "Reasonable Accommodation for an Assistance Animal" policy and "Emotional Support Animals" policy.

3. Plaintiff's treating psychotherapist supplied written documentation to the Defendant, describing Plaintiff's disability-related need for the animals and the separate therapeutic function of each dog.

4. Defendant denied the Plaintiff's requested accommodation.

5. By letter dated September 9, 2026, Defendant informed the Plaintiff that, effective August 1, 2026, it has been imposing fines of $500 per dog per day that would continue until the Plaintiff removes the dogs.

6. Defendant's refusal to modify its no-pets policy to allow the Plaintiff to maintain her assistance animals at her home violates the reasonable accommodation mandate of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B).

7. Plaintiff seeks declaratory, preliminary and permanent injunctive relief, compensatory and punitive damages, attorney's fees, costs, and all other relief authorized by law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*.

9. Venue is proper in this District under 28 U.S.C. § 1391 because the dwelling and Defendant are located in Montgomery County, Pennsylvania, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

10. Plaintiff Annabel Oliver is an adult individual who owns and resides in a dwelling at 191 Presidential Boulevard in Bala Cynwyd, Pennsylvania.

11. Ms. Oliver is a person with a handicap within the meaning of 42 U.S.C. § 3602(h).

12. Defendant 191 Presidential Condominium Unit Owners Association, also referred to in correspondence as 191 Presidential Condominiums, is the association that manages and enforces rules governing the condominium property. Defendant is located in Bala Cynwyd, Pennsylvania

## FACTUAL ALLEGATIONS

13. Ms. Oliver has been diagnosed with post-traumatic stress disorder (PTSD), depression, and severe anxiety, which substantially limit

major life activities, including thinking, concentrating, interacting with others, and caring for herself.

14. Ms. Oliver has been under the care of psychotherapist Gail Roeshman, LCSW, M.Ed for approximately six years.

15. In or about April of 2026, on the advice of her psychotherapist, Ms. Oliver adopted two dogs, Yorkshire Terriers, to provide her with assistance she needs due to her disabilities.

16. Ms. Roeshman has provided documentation explaining that the assistance animals reduce anxiety, interrupt escalating PTSD symptoms, provide grounding during emotional distress, help prevent panic and emotional dysregulation, and support Ms. Oliver’s ability to function independently.

17. Ms. Roeshman further documented that removal of Ms. Oliver’s assistance animals would likely cause a marked worsening of her symptoms and could precipitate psychiatric decompensation requiring emergency psychiatric intervention or hospitalization.

18. Ms. Oliver’s older dog, Cookie, helps to ameliorate her persistent anxiety and panic attacks.

19. Ms. Oliver’s younger dog, Cream, helps to combat severe depressive symptoms and regulate sleep.

20. Ms. Roeshman states that each animal serves a separate role and that the combined presence of the two dogs has a demonstrably beneficial effect on Ms. Oliver's functioning.

21. When Ms. Oliver adopted her assistance animals in April 2026, she did so on account of her enduring years of domestic abuse which resulted in her suffering from broken bones, a concussion and three torn rotator cuff tendons, and which precipitated her PTSD diagnosis.

22. At the time she was focused on her separation from her abuser and she was not aware of Defendant's general no-pets policy and had no reason to believe that the policy existed based on her knowledge of multiple dog owners in her building.

23. The Defendant informed Ms. Oliver about the general no-pets policy in or around April 2026, after Ms. Oliver adopted the dogs. Ms. Oliver immediately requested that the Defendant permit her to keep them as a reasonable accommodation for her disability since they are assistance animals.

24. Ms. Oliver thereafter supplied Defendant with an April 21, 2026 letter from her treating psychotherapist supporting her need for the assistance animals.

25. Defendant responded in an undated letter denying Ms. Oliver's reasonable accommodation request, stating that "Your request for a

reasonable accommodation and submission of documents does not automatically require 191 to grant your request. 191 is intentionally a no-pet building, and many of our several hundred residents chose to live at 191 for that reason."

26. On July 13, 2026, Defendant followed up with a letter informing Ms. Oliver that she would be charged $500 per dog, per day, if she did not remover her assistance animals by July 31, 2026 and that legal action may be considered.

27. Ms. Oliver responded to the denial by sending a second accommodation request letter dated July 27, 2026, emphasizing the responsibility of Defendant to grant reasonable accommodations under the Fair Housing Act.

28. She supplemented it with a second lengthier letter from her psychotherapist dated July 20, 2026 which stated that, "Allowing my patient to keep her emotional support dogs is not merely a matter of preference or convenience; it is a medically necessary accommodation that directly affects her health, safety, and ability to remain psychiatrically stable."

29. On August 14, 2026, an attorney from Disability Rights Pennsylvania wrote a third letter to Defendant and requested an exception to the no-pet policy for Ms. Oliver's two emotional support animals under the Fair Housing Act. That correspondence explained that one dog

addresses anxiety and panic symptoms while the other addresses severe depressive symptoms and sleep regulation and was supported by a third letter from Ms. Oliver's psychotherapist dated August 10, 2026.

30. Defendant's attorney denied Ms. Oliver's requested accommodation stating in a September 1, 2026 email that it would not provide a waiver to the no-pet policy based on the "factual history and information provided by Ms. Oliver," while indicating that a more detailed response would follow.

31. On September 9, 2026, Defendant's General Manager sent Ms. Oliver another letter reaffirming the denial stating that daily fines were being imposed for her refusal to remove the dogs in the amount of $500 per dog per day beginning August 1, 2026 and continuing until the dogs are removed.

32. On September 29, 2026, Defendant's attorney sent an additional letter denying the accommodation request.

33. On October 2, 2026, an attorney from Disability Rights Pennsylvania sent another request to Defendant asking it to reconsider its denial and cited Defendants' violation of its own policy that permits assistance animals and the Fair Housing Act.

34. The same day, Ms. Oliver received a bill from Defendant for $61,000 in dog fines as a result of keeping her assistance animals.

35. On October 19, 2026, Ms. Oliver requested copies from General Manager Steven Riela of 191 Presidential's "Declaration", "Rules and Regulations" and "Bylaws". This was when she first learned from Mr. Riela about an Internal Dispute Resolution (IDR) Committee run by 191 Presidential.

36. Pursuant to the "Rules and Regulations", Disability Rights Pennsylvania submitted an IDR complaint on October 21, 2026, and again requested a reasonable accommodation.

37. Ultimately the parties agreed to waive the IDR Committee, mediation, and arbitration after acknowledging Defendant would not grant the accommodation requested and such a process would be time consuming and expensive.

38. Ms. Oliver's November 1, 2026 billing statement from Defendant reflected a balance of $93,015.00 due which included fines for her assistance animals for the prior three months.

39. Defendant's refusal to allow Ms. Oliver to keep her assistance dogs and its imposition of daily fines is contrary to Defendant's own policies that allow residents to keep assistance animals.

40. Defendant's "Accommodation for an Assistance Animal" policy defines an assistance animal to include an animal that "provides emotional

support or other assistance that alleviates one or more symptoms or effects of a person's disability.”

41. The policy further acknowledges that assistance animals are not pets and thus are not barred by its no-pet policy and so Defendant will not charge any deposits, fees, or other sums related to keeping assistance animals except for violations of behavioral and control requirements. Defendant’s policy states that, when disability and disability-related need are not obvious, it may seek written documentation from a medical professional that the resident has a disability and that the animal would alleviate one or more symptoms or effects of the disability.

42. Ms. Oliver provided the requested information establishing that she has disabilities and that her dogs serve as her assistance animals to alleviate the symptoms of her disabilities. The documentation specifically detailed how each dog provides different types of assistance to Ms. Oliver.

43. Ms. Oliver keeps her assistance animals under control on leashes when they are outside her condominium unit and picks up their waste and she will continue to do so. Ms. Oliver also has no objection to compliance with other reasonable, neutral rules concerning sanitation, noise, supervision, and actual property damage.

44. Other residents at the condominium keep dogs, including residents near Ms. Oliver's unit. Ms. Oliver is not presently aware whether

each such dog is a pet, grandfathered animal, service animal, or assistance animal.

45. Defendant's continued assessment of $1,000 per day exposes Ms. Oliver to rapidly increasing financial liability and potential collection or lien consequences.

46. Ms. Oliver has suffered emotional distress and harm due to Defendant’s insistence that she remove her assistance animals and as a result of the rapidly increasing fines.

47. Ms. Oliver has no adequate remedy at law for the threatened loss of her disability-related assistance animals and the resulting risk of psychiatric deterioration.

48. Defendant’s refusal to allow Ms. Oliver to keep her assistance animals as a reasonable accommodation reflects an intentional and willful violation of the Fair Housing Act and/or with callous disregard of Ms. Oliver’s federally protected rights under that Act.

## CLAIMS

## COUNT I – VIOLATION OF THE FAIR HOUSING ACT’S REASONABLE ACCOMMODATION MANDATE

49. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

50. Plaintiff is a person with a handicap pursuant to 42 U.S.C. § 3602(h).The Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3) makes it unlawful to discriminate based on handicap in the sale or rental of a dwelling; to otherwise make unavailable or deny a dwelling to a person residing in the dwelling after it is sold on the basis of handicap; or to discriminate based on handicap in the terms, conditions, or privileges of a dwelling or in the provision of services or facilities in connection with the dwelling. 42 U.S.C. §§ 3604(f)(1)-(2).

51. The FHA specifically states that “discrimination” on the basis of handicap includes “refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.” 42 U.S.C.. § 3604(f)(3)(B).

52. Waiver of a housing provider’s no-pets policy to allow a person with a handicap to keep an assistance animal that they need due to their disability to use and enjoy a dwelling is a reasonable accommodation that must be afforded under the FHA.

53. Defendant knew of Plaintiff's disability and disability-related need for the requested accommodation.

54. Plaintiff requested an exception or modification to Defendant's no-pets policy to permit her to keep her two assistance animals.

55. The requested accommodation is reasonable and necessary to afford Plaintiff an equal opportunity to use and enjoy her dwelling. Both assistance animals provide unique functions to assist Plaintiff with functioning limits stemming from her disabilities. If she cannot keep her assistance animals, the Plaintiff may be required to relocate.

56. Defendant denied and continues to deny the accommodation and has imposed or threatened substantial daily fines for Plaintiff's continued possession of the dogs.

57. Defendant's refusal to grant Plaintiff’s requested reasonable accommodation constitutes unlawful discrimination under 42 U.S.C. § 3604(f)(3)(B).

58. As a direct and proximate result, Plaintiff has suffered and continues to suffer emotional distress, interference with the use and enjoyment of her home, financial injury and exposure, and other damages.

## COUNT II - INTERFERENCE WITH FAIR HOUSING RIGHTS

59. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

60. The FHA provides that “[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise

or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.” 42 U.S.C. § 3617.

61. Plaintiff exercised rights protected by the Fair Housing Act by requesting and pursuing a reasonable accommodation.

62. Defendant knew Plaintiff was asserting rights under the Fair Housing Act.

63. Defendant has continued to impose or threaten escalating daily fines while demanding removal of the assistance animals for which Plaintiff sought accommodation.

64. Defendant's conduct has interfered with, coerced, intimidated, or impeded Plaintiff's exercise and enjoyment of rights protected by the Fair Housing Act.

65. Plaintiff has suffered injury as a result.

## **RELIEF REQUESTED**

66. Plaintiff respectfully requests that the Court award them the following relief:

a. exercise jurisdiction over this action;

b. issue appropriate declaratory relief and injunctive relief, including declaring that Defendants violated the Fair Housing Act and issuing a temporary restraining order, preliminary injunction, and permanent injunction to permit Plaintiff to keep her two assistance animals

and to bar Defendant from imposing fees, fines, or any other charges or taking any other adverse actions against her;

c. award compensatory and punitive damages; and

d. grant such other relief as may be appropriate, including reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613.

Date: November 19, 2026

**Respectfully submitted,**

By: /s/ Jenee' N. Oliver

Jenee' N. Oliver (PA. I.D. No. 200374)
Disability Rights Pennsylvania
429 Fourth Avenue, Suite 1404
Pittsburgh, PA 15219
(800) 692-7443, Ext. 181
joliver@disabilityrightspa.org

Christina Drzal (PA I.D. No. 95124)
Disability Rights Pennsylvania
1800 JFK Blvd., Suite 900
Philadelphia, PA, 19103
(215) 238-8070, Ext. 135
cdrzal@disabilityrightspa.org

Counsel for Plaintiff